Milton **MARGOLES**, Plaintiff,

v.

Alida **JOHNS**

and

The Journal Company, Journal Square,
Milwaukee, Wisconsin, Defendants.

Civ. A. No. 1669–71.

United States District Court,
District of Columbia.

Nov. 18, 1971.

John P. Diuguid, Washington, D. C.,
for plaintiff.

Roberts B. Owen, Washington, D. C.,
for defendants.

MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

I.   FACTUAL STATEMENT.

This is an action for slander in which
the plaintiff, a physician and a resident
of Illinois, alleges that defendant Johns,

a newspaper reporter for the *Milwaukee Sentinel* and a resident of Wisconsin, made defamatory statements in two telephone calls from Milwaukee, Wisconsin, to the District of Columbia. Specifically, the complaint alleges that in the courts of an August 20, 1970 telephone conversation, Miss Johns stated that the plaintiff was guilty of "abortion charges," ran a "house of ill-fame," and was "unfit for help by decent people;" and that in a subsequent telephone conversation on September 2, 1970, Miss Johns declared that plaintiff ran an "abortion mill" in Wisconsin and that "all the women who went there came out with hysterectomies." Miss Johns' employer, the Journal Company, which publishes the *Milwaukee Sentinel,* is named as a co-defendant pursuant to plaintiff's allegation that Miss Johns' telephone calls were on behalf of the Journal Company and were within the scope of her employment.

This matter is before the Court on defendants' motions to dismiss for lack of personal jurisdiction, lack of service of process and improper venue. Since the Court bases its ruling on the jurisdictional issue, the question of venue need not be considered.

## II. JURISDICTION—THE DISTRICT OF COLUMBIA'S LONG-ARM STATUTE.

Although plaintiff might have asserted federal jurisdiction on the grounds of diversity under 28 U.S.C. § 1332, he chose to avoid such jurisdiction and to rest his complaint solely on local jurisdiction.[1] When queried by the Court during the oral argument, plaintiff's counsel insisted that the action was brought locally and declined to assert federal jurisdiction. Accordingly, the Court entertains this action pursuant to D.C.Code § 11–501 (Supp. IV, 1971) and treats the jurisdictional issue under D.C.Code § 13–423 (Supp. IV, 1971), a provision of the recently enacted long-arm statute of the District of Columbia.[2]

Our long-arm statute enumerates six bases for personal jurisdiction over nonresidents based on conduct. Although some form of tort action might conceivably arise under another subsection, only two subsections, (3) and (4), specifically deal with tortious injury. The

---

1. The local provision cited in the complaint, D.C.Code § 13–423, addresses only the question of personal jurisdiction. Although not specifically cited, it is clear that D.C.Code § 11–501 is relied upon as plaintiff's basis for subject matter jurisdiction.

2. The new long-arm statute was enacted as Section 132 of the District of Columbia Court Reform and Criminal Procedure Act of 1970. 84 Stat. 473, 548–50. According to the Senate Committee on the District of Columbia, this section amends Title 13 of the District of Columbia Code by

"incorporating a codified version of the first two articles of the Uniform Interstate and International Procedure Act. The uniform provisions codify recent case law with respect to extra-territorial jurisdiction over and service upon persons in civil litigation, and supply the reorganized trial bench of general jurisdiction with a necessary procedural adjunct. Chapter 4 more specifically grants expanded basis of jurisdiction and modes of service identical to or reciprocal with those provided under the

laws of the nearby State of Maryland for the courts of that State, and substantially the same as those provided in the adjacent State of Virginia and approximately 10 other States." S.Rep. No.405, 91st Cong., 1st Sess. 35 (1969). The House Committee Report, which sets forth a section-by-section analysis of the statute, states the following:

"Section 13–423 permits personal jurisdiction by a District of Columbia court over specified persons because of specified connections with the District, such as doing business in the District, such jurisdiction to be limited to claims arising from the specified connection." H.R.Rep.No.907, 91st Cong., 2d Sess. 163 (1970).

The new law provides a guide to its own interpretation by declaring that where the statutory language so permits, the District of Columbia statute "shall be so interpreted and construed as to make it uniform with the laws of those jurisdictions which enact in comparable form the first two articles of the Uniform Interstate and International Procedure Act." D.C.Code § 13–402 (Supp. IV, 1971).

**944**

applicable portions of the statute are set out below:

§ 13–423  Personal Jurisdiction Based Upon Conduct

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

\* \* \* \* \* \*

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

\* \* \* \* \* \*

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.  D.C.Code § 13–423 (Supp. IV, 1971).

### III. APPLICATION OF THE LONG-ARM STATUTE TO DEFENDANT JOHNS.

Plaintiff bases his assertion of personal jurisdiction over defendant Johns on Section 13–423(a) (3) of the District of Columbia Code: "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." The statute permits service if the tortious injury occurs in the District of Columbia and the act causing the injury also occurs in the District of Columbia. The only issue of any moment is whether the defendant Johns acted in the District of Columbia.

That injury, if any, to the plaintiff's reputation occurred in the District of Columbia may be inferred from his uncontested allegation that publication occurred here. Plaintiff need not specifically allege that he had a reputation in the District and that he suffered injury to that reputation here—both the reputation and the injury may be inferred from the complaint and the nature of the tort itself.

On the question of where Johns acted, plaintiff argues that:

"the physical location of the speaker is of no consequence. The speaker uses the telephone as an instrument to project his presence into a particular location and the manner of the use of this instrument is completely within the purposeful and calculated control of the speaker. The place of the uttering of the words is of no significance because of their impermanence. No action, activity or act occurs until the words are heard."

Although this argument may have some persuasive value, any such value is diminished by the final sentence. While it is correct to state that no "tort" occurs until the words are heard, one may not infer that no "act" occurs prior to or separate from the hearing of the words. At a minimum the tort of slander requires two persons to act: the first person must act by speaking the words and the second must listen to the words. Obviously, in point of time these acts generally occur simultaneously. In the instant case, the defendant was not in this jurisdiction when she performed the act of speaking (nor indeed the acts of holding or dialing the telephone). The listener was here and the "tortious injury" occurred here, but it does not follow that defendant's act occurred here. The fact that the District may be the place of the tort for conflict of laws purposes is not pertinent to this discussion.[3] The

3. The traditional conflicts principle applicable to such situations is that the place of the tort is the place where the last event necessary to complete the tort took place. *See* Howser v. Pearson, 95 F.Supp. 936, 938 (D.D.C.1951); Restatement of Conflicts of Law § 377 and Comment 5 (1934). The modern view is

statute clearly separates the act from the tortious injury and affords personal jurisdiction over non-residents only when both act and injury occur in the District.[4]

Since personal jurisdiction cannot be exercised over Miss Johns for the reasons discussed above, service of process by mail was not authorized by Sections 13–424 and 13–431 of the Code, and the return of service of process upon Miss Johns should be quashed.

## IV. APPLICATION OF THE LONG-ARM STATUTE TO DEFENDANT JOURNAL COMPANY.

Defendant Johns' employer, the Journal Company, is named as a co-defendant pursuant to plaintiff's allegation that Miss Johns' telephone calls were on behalf of the Journal Company and were within the scope of her employment. The Journal Company is a Wisconsin corporation with its principal place of business in that state. The company publishes two newspapers in Milwaukee, the *Journal* and the *Sentinel,* which report international and national events along with local stories. The Journal Company maintains three permanent offices in the National Press Building here in the District of Columbia and has assigned three reporters to this jurisdiction. Subsection (a) (4) of Section 13–423 of the District of Columbia Code affords personal jurisdiction over a person—defined in Section 13–421 so as to include a "corporation * * * whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the law of the District of Columbia"—who acts directly or by an agent, as to a claim for relief arising from the person's:

"causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, *engages in any other persistent course of conduct,* or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; * * *." (emphasis supplied)

The Journal Company's gathering of news in this jurisdiction is clearly a persistent course of conduct. However, this finding, alone, is not conclusive, because the plain language of subsection (b) of Section 13–423 appears to limit jurisdiction over the defendant to a "claim for relief arising from acts enumerated in this section." The interaction of Subsection (b) and the various provisions of Subsection (a) of the statutory provision is somewhat confusing. Although the legislative history sheds little light on this interaction, the Commissioners' Note following Section 1.03 of the Uniform Interstate and International Procedure Act (from which Section 13–423 derives) indicates that Subsection (b) does not limit Subsection (a) in the manner suggested above. The Note reads in pertinent part as follows:

"It should be noted that the regular solicitation of business or *the persistent course of conduct* required by section 1.03(a) (4) *need have no relationship to the act* or failure to act *that caused the injury.* No distinctions are drawn between types of tort actions.

"In sustaining the exercise of jurisdiction over a defendant who has caused injury in the state by means of a tortious act done outside the state, the courts have often emphasized that the defendant had contacts with the state that bore no relation to the particular tort.

less dogmatic. *See* Restatement (Second) of Conflicts of Law §§ 145, 149 and Comment (d) thereof (1971).

4. Earlier long-arm statutes, referring only to the "commission of a tortious act" without distinction between act and injury or referring to the commission of

"a tort in whole or in part," have sometimes been read to permit the assertion of personal jurisdiction upon the basis of only a single act outside the state causing injury within it. See generally, Annot., 24 A.L.R.3d 532, 571–614 (1969). Our statute contains no such ambiguities.

\* \* \* \* \* \*

"The concept of cause of action or claim for relief should be broadly construed to cover an entire transaction so that, when possible, the entire dispute may be settled in a single litigation. *Subdivision (b) is designed to prevent assertion of independent claims unrelated to any activity described in subdivision (a) of section 1.03.*" (citations omitted and emphasis added)

In light of the Commissioners' Note and the dictates of Section 13–402 (requiring us to construe the language of our statute in accord with those jurisdictions who have enacted comparable legislation patterned after the Uniform Act), this Court would otherwise be inclined to assert personal jurisdiction over the corporate defendant.

However, the fact that the Journal Company is a newspaper requires the weighing of different considerations. Two recent *Fifth Circuit* opinions, New York Times Co. v. Connor, 365 F.2d 567 (5th Cir. 1966) and Curtis Publishing Co. v. Birdsong, 360 F.2d 344 (5th Cir. 1966), hold that the First Amendment exempts non-resident publishers from long-arm jurisdiction in minimum contact circumstances similar to those of the instant case. Although *Connor* and *Birdsong* were libel cases, they involved the very broad Alabama long-arm statute, and are applicable to and controlling in the present action. As the Fifth Circuit stated in *Connor:*

"\* \* \* First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity. \* \* \* Indeed, this Court in Walker v. Savell, 5th Cir. 1964, 335 F.2d 536, 544, approved such a distinction which Mississippi courts apparently follow 'because of the inherent danger or threat to the free exercise of the right of freedom of the press if jurisdiction in every state can be inferred from minimal contacts. Cf. New York Times v. Sullivan, 376 U.S. 254, 84 S.

Ct. 710, 11 L.Ed.2d 686.'" 365 F.2d at 572.

■ This position is further buttressed by our Court of Appeals' decisions recognizing the unique dual character of the District of Columbia, a jurisdiction which is both an urban community and the seat of the national government. *See e. g.,* Fandel v. Arabian-American Oil Co., 120 U.S.App.D.C. 193, 345 F.2d 87 (1965). It has long been settled that a foreign newspaper corporation maintaining an office and news correspondents in the District of Columbia for the gathering of news is not "doing business" for the purpose of service of process on a local reporter news correspondent. *See* Bulletin Co. v. Origoni, 128 U.S.App.D.C. 282, 387 F.2d 240, cert. denied, 389 U.S. 928, 88 S.Ct. 287, 19 L.Ed.2d 278 (1967); Layne v. Tribune Co., 63 U.S.App.D.C. 213, 71 F.2d 223 (1934); and Neely v. Philadelphia Inquirer Co., 61 App.D.C. 334, 62 F.2d 873 (1932).

■ It therefore appears clear that the same reasons which militated against the assertion of jurisdiction over foreign newspaper corporations whose local contacts arose solely out of the gathering of news also apply to limit our jurisdiction under the recently enacted long-arm statute.