SECURITY BANK, N. A., Plaintiff,

v.

Lazlo TAUBER, Defendant.

Louis I. KEA, Plaintiff,

v.

Diane HOFFMAN, Defendant.

Civ. A. Nos. 2601–69, 269–72.

United States District Court,
District of Columbia,
Civil Division.

Sept. 11, 1972.

512

Leonard C. Collins, Washington, D. C., for plaintiff Security Bank, N. A.

Louis Ginberg, Washington, D. C., for defendant, Lazlo Tauber.

David A. Jones, Chevy Chase, Md., for Louis I. Kea.

Steven K. Yablonski, and Donald T. Bucklin, Washington, D. C., for Diane Hoffman.

## MEMORANDUM OPINION

FLANNERY, District Judge.

These two otherwise unrelated cases are treated *together in this Opinion* because they present similar questions concerning the interpretation and application of the District of Columbia new long-arm jurisdictional statute, found at D.C.Code 13–421. For the reasons set forth hereinafter the Court grants the defendant's motion for summary judgment in the case of Security Bank v. Tauber, Civil Action No. 2601–69 and grants the defendant's motion to dismiss for lack of jurisdiction over the person and lack of service of process in the case of Kea v. Hoffman, Civil Action No. 269–72.

The long-arm statute in the District of Columbia, effective February 1, 1971, provides in relevant parts as follows:

§ 13–423. Personal jurisdiction based upon conduct

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising *from the person's*—

    (1) transacting any business in the District of Columbia;

.   .   .   .   .   .

    (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

    (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods, used or consumed, or services rendered, in the District of Columbia;

.   .   .   .   .   .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C.Code § 13–423 (Supp. V 1972). Once the exercise of personal jurisdiction is authorized by any of the provisions above, service may be made outside the District of Columbia in a number of ways including return-receipt mail. D. C.Code §§ 13–424, 13–431 (Supp. V 1972).

Plaintiffs invoke these sections to support their respective claims of *in personam* jurisdiction. Of course, the burden of proving jurisdictional facts rests upon the plaintiff. *See* McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182, 189, 56 S.Ct. 780, 80 L. Ed. 1135 (1936). In their respective motions, both defendants challenge the attempt by the plaintiffs to shoulder this burden.

In deciding these cases, the Court must determine whether, in light of the facts presented, the assertion of jurisdiction and service of process over the non-resident defendants is authorized by the statute.

Turning first to a consideration of Security Bank v. Tauber, the Court finds that the defendant Tauber as sole stockholder of the L & L Corporation contracted with a general contractor, Whiting-Turner, to construct a building in Rockville, Maryland. The defendant had the right and control of "retainage" so that upon satisfactory performance by a subcontractor of the subcontractor's contract with Whiting-Turner, the defendant could direct the title company holding construction funds to pay the retainage to the subcontractor.

Whiting-Turner subsequently contracted with subcontractor Ray Gaines, Inc. to do certain cement work. Gaines needed money to do the work and, therefore, decided to borrow money from plaintiff Security Bank. As collateral, Gaines assigned to the plaintiff $200,000 of the amount which he would receive

for his cement work. Because defendant was the one who controlled the disbursement of the retainage money, Gaines first went to the defendant to have the defendant approve the assignment to plaintiff Bank of $200,000 of any funds Gaines might receive as a result of Gaines' contract with Whiting-Turner. Defendant signed his name approving this assignment.

The plaintiff made the loan and Gaines subsequently defaulted. The plaintiff now charges that it believed that there was a contract between defendant and Gaines and that it would not have loaned the money if it had known that Gaines' contract was with Whiting-Turner and not the defendant. Therefore, plaintiff has initiated this action against defendant claiming damage as the result of misrepresentation. In response the defendant asserts that the plaintiff's own negligence in failing to ascertain the nature of and the parties to the contract caused its loss.

The defendant, a resident of the State of Maryland who had his business office in the State of Virginia, received service of process in Virginia. He has not developed any real estate or conducted any other business in the District of Columbia since 1964.

The defendant's signing of the assignment paper took place in Virginia, after which Gaines took the paper to the plaintiff Bank in the District of Columbia. Although the defendant knew Gaines would take this action, he did nothing in the District of Columbia in connection with the assignment. Plaintiff alleges that the District of Columbia's long-arm statute applies since defendant acted through an agent "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." 13 D.C.Code § 423(a)(3).

■ Although this action was filed several months before the long-arm statute took effect, retroactive application of the statute has been recently upheld, and thus the Court will treat the statute

as applicable in this case. See Liberty Mutual Insurance Co. v. American Pecco Corp., 334 F.Supp. 522 (D.D.C.1971).

A recent case treating the problems raised by the new long-arm statute is Margoles v. Johns, 333 F.Supp. 942 (D.D.C.1971). In Margoles, the plaintiff, a resident of Illinois, alleged that defendant, a newspaper reporter in Wisconsin, made defamatory statements in two telephone calls from Wisconsin to the District of Columbia. In analyzing the statute, the Court stated "[t]he statute clearly separates the act from the tortious injury and affords personal jurisdiction over non-residents only when both act and injury occur in the District." Id. at 944. Thus, the Court reasoned that although the injury occurred in the District, and although the injury did not occur until the conversation was heard in the District, nevertheless the allegedly tortious act occurred in Wisconsin and, therefore, *both* the act and the injury did *not* occur in the District. As a result, defendant's motion to quash service of process was granted.

■ In the present case, plaintiff bases its cause of action on the alleged misrepresentation occurring when the defendant signed the assignment at his office in Virginia. Clearly then, the act took place in Virginia. However, contrary to plaintiff's contention, it is also apparent that Gaines was not defendant's agent. Gaines was not acting on behalf of defendant when he went to the bank, but was acting on his own behalf. Although the defendant may have known the destination and purpose of Gaines after defendant signed the paper, he did not direct Gaines to do anything on his behalf.

Alternatively, plaintiff contends that § 13–423(a)(4) of the long-arm statute applies. This section would grant jurisdiction even if the act complained of took place outside of the District as long as the injury took place in the District of Columbia *and* the defendant "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from

goods used or consumed, or services rendered, in the District of Columbia."

Apparently, plaintiff bases his assertion on the fact that although all of defendant's real estate development took place outside of the District of Columbia, he settled some of these transactions in the District of Columbia office of the District-Realty Title Company, and had a bank connection in the District of Columbia.

■ *Margoles* makes clear that unlike § 13–423(a)(1), § 13–423(b) does not limit § 13–423(a)(4) to doing only that business which gives rise to the claim for relief. Thus, regularly doing any kind of business within the District or engaging in any kind of persistent course of conduct within the District will subject defendant to long-arm jurisdiction. The question thus presents itself whether defendant's use of a District title company and a District bank sufficiently satisfies the "regularly doing business" or the "regularly engaging in any persistent course of conduct" requirements. This issue cannot be resolved by applying a mechanical formula as resolution must depend on the facts of each case. *Cf.* Franklin National Bank v. Krakow, 295 F.Supp. 910 (D.D.C.1969).

■ In approaching the resolution of this question, this Court is impressed with the apparent Congressional intent to confine the minimum contacts set out in this section of the statute to those contacts which are continuing in nature. The statute does not say "doing business" or even "doing substantial business". Rather it clearly specifies *"regularly* doing business". Moreover, the statute does not say "engages in a course of conduct" or even "engages in a significant course of conduct". Instead, Congress, consistent with their use of "regularly" above, specifies "a *persistent* course of conduct". The use of "persistent" and "regularly" to describe the type of contact contemplated indicates that Congress was more concerned with a continuing contact than with the

impact or substance of a single contact. Therefore, the minimal contacts with the District that are required should at least be continuing in character. *Cf.* Topik v. Catalyst Research Corp., 339 F.Supp. 1102 (D.Md.1972).

■■ Although it is plain that defendant had some contact with the District through use of the title company for settlement of his out-of-state real estate business transactions, plaintiff has not provided this Court with any indication of the degree of regularity with which the defendant allegedly engaged in this activity. Clearly, the strength of a contact with a jurisdiction cannot be ignored and yet it must be weighed along with the continuity of contact in evaluating the applicability of this section of the statute. The strength of the title company contact is questionable and when weighed along with plaintiff's failure to establish some degree of contact regularity, this Court must decide in favor of defendant and grant his motion to quash service of process.

■ However, assuming *arguendo* jurisdictional basis for a decision on the merits in *Security Bank,* the assignment and attendant circumstances, as a matter of law do not show a misrepresentation by the defendant to the effect that he, rather than Whiting-Turner, held the cement contract with Ray Gaines, Inc. In addition, the plaintiff could have learned the facts and parties to the contract by any reasonable inquiry or investigation. Plaintiff's officers are experienced bank officials and the contract and its terms were available to the bank for perusal upon request of these officials. Plaintiff admits that at no stage does it contend that defendant deliberately lied to plaintiff regarding this matter. In the opinion of the Court if there was any negligence present in this case, it was the negligence of the bank officials in lending money based on an unsupported assumption. *Cf.* Zoslow v. National Savings and Trust Co., 91 U.S. App.D.C. 391, 201 F.2d 208 (1952); Public Motor Service v. Standard Oil Co. of New Jersey, 69 App.D.C. 89, 91, 99

F.2d 124, 126 (1938). Finally, there was no proximate cause between the claimed misrepresentation and the damages suffered. Rather, the proximate cause of plaintiff's loss was Gaines' insolvency and its financial inability to complete a job. This failing cost Gaines its retainage and the bank its collateral. It was this failure, as well as the bank's carelessness, that was the proximate cause of plaintiff's injury.

Therefore, the Court grants the defendant's motion for summary judgment.

In the *Kea* case, the second of the two cases now before the Court, the plaintiff was approached in the District of Columbia by a salesman working on a commission basis for a Florida corporation. The salesman persuaded the plaintiff, a District of Columbia resident and retired government worker, to become a distributor in the Metropolitan/District of Columbia area for the Florida corporation's products. In exchange, plaintiff paid the salesman $3,520.00. The defendant in this case is the President and minority stockholder of the Florida corporation. The defendant, a Florida resident, is being sued in her individual capacity and not as a corporate officer. The Florida corporation itself has since gone bankrupt, and the plaintiff seeks a refund of her money plus consequential and punitive damages from the individual Florida defendant. Service of process on defendant Hoffman was made by registered mail, and this Court's jurisdiction over this out-of-state defendant is bottomed on D.C.Code §§ 13–423(a)(1), (3) and (4), *supra.*

In order to bring herself within the requirements of these sections, the plaintiff primarily relies on the following factual allegations:

(a) That the salesman who negotiated the contract with the plaintiff in the District of Columbia was not only an agent for the Florida corporation, but also an agent for the defendant in her individual capacity;

(b) That the defendant herself and her agents made misrepresentations about the personal liability of the defendant;

(c) That the defendant sent one letter and made two phone calls into the District of Columbia in connection with this transaction.

Although other facts are alleged, they are without persuasive value on the issue of jurisdiction.

Allegation (a) above is totally without evidentiary support in this record. The salesman who negotiated plaintiff's contract was a corporate sales representative whose commission was presumably paid by the corporation. The only connection that defendant had with this contract is that her signature as corporation President appears on it, hardly a basis to hold the defendant personally liable.

Allegation (b) above is similarly without merit. Although affidavits in the record demonstrate that various individuals did travel from Florida to the District of Columbia to try to placate the plaintiff, they were all clearly corporate representatives and not agents of the defendant acting in an individual capacity. The defendant has not been in the District of Columbia for over twenty years.

As to allegation (c) above, the letter defendant Hoffman sent to the plaintiff was merely one sent by the corporations' President to welcome to the corporation the plaintiff, their newest distributor. Again, following the defendant's signature is the title "President".

█ In short, it is clear that although the *corporation* "transacted" substantial "business" within the District of Columbia through *its* agents, the individual defendant transacted none. Thus, sections (a)(1) and (a)(4) of the long-arm statute are unavailable to plaintiff as a basis for jurisdiction. *See* Unicon Management Corp. v. Koppers Company, 250 F.Supp 850 (S.D.N.Y. 1966).

█ Nor do the two phone calls made by defendant into the District of Columbia provide a jurisdictional basis

under section (a)(3), even assuming that fraudulent misrepresentations were made by defendant to plaintiff during those conversations. These calls from Florida were the act of the defendant in Florida, and not "an act or omission in the District of Columbia". *See* Margoles v. Johns, *supra.*

Accordingly, defendant Hoffman's motion for dismissal for lack of jurisdiction is granted.