**Nancy LaBRIER, Plaintiff,**

v.

**A.H. ROBINS COMPANY, INC., et al., Defendants.**

**Civ. A. No. 81–0695.**

United States District Court,
District of Columbia.

Sept. 29, 1982.

Philip Silverman, Washington, D.C., for plaintiff.

Francis L. Casey, Jr., Thomas M. Hogan, Robert E. Higdon, J. Joseph Barse, Washington, D.C., for defendants.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff brings this case on the basis of product liability, medical negligence, civil conspiracy, and fraud, as the result of injuries she allegedly suffered from the use of a Dalkon Shield manufactured by A.H. Robins Company (Robins), and designed by Hugh J. Davis (Davis) and Irwin S. Lerner (Lerner). Also named as a defendant is G.D. Searle and Company (Searle) which manufactured a device commonly known as "Copper-7" which was used by the plaintiff for two weeks in 1976.[1]

The case is now before the Court on Robins' motion to dismiss, or in the alternative, to transfer the case to the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. § 1406(a) (transfer where there is improper venue in the district where the case is filed), or 28 U.S.C. § 1404(a) (transfer where there is proper venue in the district where filed and transfer is made for the convenience of parties and witnesses), and on Searle's motion to dismiss for lack of personal jurisdiction and forum non conveniens. The defendants Davis and Lerner orally joined in the Robins' motion as did Searle, provided the Court does not grant its separate motion to dismiss on jurisdictional grounds. The Court heard arguments on September 23, 1982.

I

Very briefly, the underlying facts are as follows:

Plaintiff was born in St. Louis, Missouri, in 1951. In 1971 she married Larry E. LaBrier and they moved to Woodbridge, Virginia the same year, as Mr. LaBrier was on active military duty in the United States Navy. They lived in Woodbridge from July 1971 until June 1973 when they moved to Oxon Hill, Maryland, where they resided until April 1974. In mid-1974 they returned to Missouri where they presently reside.

Prior to her marriage, the plaintiff was treated generally by physicians in Missouri. The Dalkon Shield intrauterine contraceptive device (IUD) was allegedly inserted at the United States Navy Dispensary in Washington, D.C. on December 10, 1971 and was removed at the Dispensary on April 13, 1973, after the plaintiff complained of heavy bleeding upon menstruation and intermittent, vague pelvic pain, and expressed a desire to conceive a child.

In 1974, while using oral contraceptives, plaintiff experienced breakthrough bleeding and was treated by a physician in St. Louis, Missouri. In November 1975, plaintiff was admitted to a hospital in Missouri with a third trimester pregnancy complicated by a condition known as "placenta previa". The same month, she gave birth to a normal, healthy child, delivered by Caesarian section. In September 1976, a St. Louis physician inserted a "Copper-7" IUD in plaintiff at a clinic in Missouri. This IUD was removed shortly thereafter in October 1976 at the Emergency Room of a St. Louis hospital. Plaintiff was admitted to another St. Louis hospital two days later with a complaint later diagnosed as a ruptured right ectopic pregnancy in her right fallopian tube. Her right fallopian tube was removed as was an ovarian cyst from plaintiff's right ovary.

Plaintiff commenced use of a diaphragm in November 1976 and used it until she believed that she had become pregnant. She was admitted to a St. Louis hospital on December 30, 1976 complaining of pain. An exploratory laparotomy revealed an enlarged left fallopian tube as well as other problems. The tube was repaired and a cyst removed from her left ovary.

Plaintiff continued to experience a number of gynecological problems during 1977, 1978 and 1979, including a cyst in her right ovary and excessive uterine bleeding upon menstruation. Finally, she had a total abdominal hysterectomy in November 1979.

All of the above events occurred while she resided in Missouri and all medical procedures were performed by doctors practicing in that state and in hospitals located in Missouri. The only events taking place in

---

1. Pee Wee Molding Corporation was dismissed as a defendant on August 10, 1981.

this judicial district were the insertion and removal of the Dalkon Shield in 1971 and 1973, respectively. The Dalkon Shield was inserted and later removed by Naval doctors who are presently unknown and it is quite likely that they no longer are stationed or reside in this area.

Plaintiff claims that seven events are associated with her use of the Dalkon Shield:

(1) The November 1975 pregnancy with "placenta previa" condition;

(2) The October 1976 ruptured right ectopic pregnancy, right salpingectomy and right ovarian cyst;

(3) The December 1976—January 1977 claimed ectopic pregnancy and left ovarian cyst;

(4) The July 1978 ovarian cysts and tubal adhesions;

(5) The December 1978 menorrhagia and dilation and curretage procedure;

(6) The May 1979 left ovarian cyst and adhesions; and

(7) The November 1979 hysterectomy and salpingo-oophorectomy.

Plaintiff's Answer to Interrogatory No. 26. All of these events occurred at a time when the plaintiff was residing in Missouri and under treatment by doctors in that state.

## II

Turning first to the motion to dismiss filed by Searle, the Court notes that plaintiff is and was at all relevant times a citizen of the State of Missouri. Complaint ¶ 1. Searle is "a corporation organized and existing under and by virtue of one of the states of the United States and authorized to do, and is actually doing business in Washington, D.C." Complaint ¶ 49.

Counts seven through nine of the complaint state claims of negligence, strict liability and breach of express warranty against defendant Searle, based on injuries arising out of plaintiff's use of the "Copper-7". Plaintiff alleges that Searle, during the relevant period, sold, manufactured, distributed, marketed and tested the "Copper-7". Complaint ¶ 50.

On or about September 22, 1976 plaintiff's physicians, after examination, prescribed and inserted in plaintiff a "Copper 7", which she used until approximately October 2, 1976, when it was removed. All of these acts occurred in Missouri. Complaint ¶¶ 50, 51.

Subject matter jurisdiction in this Court is based on diversity of citizenship. Plaintiff asserts personal jurisdiction over Searle pursuant to the District of Columbia longarm statute, D.C.Code Ann. § 13–423 (1973).[2]

Under § 13–423(a)(1), "[a]ll that is required is some affirmative act by which the defendant brings itself within the jurisdiction and establishes minimum contacts." *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 158 (D.C.App.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978). But, the District of Columbia courts have construed § 13–423(b) to bar claims unrelated to the particular transaction carried out in the District of Columbia upon which jurisdiction is based. *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C.Cir.1981); *see Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. App.1979); *Cohane*, 385 A.2d at 158. In *Cohane* the court provided an instructive example:

In other words, the statute [§ 13–423(a)(1)] would not grant ... jurisdiction over a non-resident defendant with

**2.** Section 13–423 provides, in pertinent part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

. . . . .

(4) causing tortious injury in the District of Columbia by an act or omission outside the

District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

. . . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

respect to a claim arising from a shipment of goods to a purchaser in Pennsylvania, solely on the ground that the defendant had also shipped goods to purchasers in the District.

385 A.2d at 158.

Plaintiff's reliance on *Aiken v. Lustine Chevrolet, Inc.,* 392 F.Supp. 883 (D.D.C. 1975), for the proposition that defendant's contacts with the District of Columbia *"need have no relationship to the act or failure to act that caused the injury," Id.* at 885 (quoting from the Commissioner's Notes to the Uniform Interstate and International Procedure Act) (original emphasis), is inapposite because that case involved an interpretation of § 13–423(a)(4).[3] This Court has stated "that unlike § 13–423(a)(1), § 13–423(b) does not limit § 13–423(a)(4) to doing only that business which gives rise to the claim for relief." *Security Bank, N.A. v. Tauber,* 347 F.Supp. 511, 515 (D.D.C.1972). Jurisdiction under § 13–423(a)(1) is governed by the language in *Berwyn Fuel* and *Cohane, supra. See Gatewood v. Fiat, S.P.A.,* 617 F.2d 820, 825 n. 7 (D.C.Cir.1980).

■ In this case, the alleged tort did not occur in the District of Columbia so § 13–423(a)(4) does not apply. Moreover, since plaintiff does not allege that the conduct of Searle which gave rise to her injury was related to its contacts with the District of Columbia this Court may not assert long-arm jurisdiction pursuant to § 13–423(a)(1). Accordingly, there is a lack of personal jurisdiction over Searle.

### III

Robins moves for dismissal, or transfer based on 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). Robins' motion to dismiss is denied.

Under 28 U.S.C. § 1391(a), where jurisdiction of the federal court is founded on diversity of citizenship, an action may be brought "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and that judicial district is regarded as the residence of the corporation for venue purposes. 28 U.S.C. § 1391(c).

■ Robins contends that venue in this judicial district is improper because the plaintiff does not reside here, all of the defendants do not reside here (Davis and Lerner reside in Maryland and Connecticut respectively), and the claim did not arise here. While Robins is correct on the first two points, it is not clear that the claim did not arise here. The fact that the Dalkon Shield was inserted and removed in this judicial district, and that it was allegedly removed because the plaintiff complained of heavy bleeding upon menstruation and intermittent vague pelvic pain, leads this court to conclude, at least preliminarily for the purposes of the motion, that the claim, insofar as it relates to Robins, arose in this district. Thus Robins motion to transfer pursuant to 28 U.S.C. § 1406(a) must be denied.

■ So much of Robins' motion as is based on 28 U.S.C. § 1404(a) to transfer the case to the Eastern District of Missouri, Eastern Division, for the convenience of the parties and witnesses, presents a different issue. As is obvious from Part I, *supra,* every significant event in this case, except the insertion and removal of the Dalkon Shield, occurred in Missouri. All of the known doctors who treated plaintiff and who would be expected to testify in this case reside and practice in the St. Louis area. All of the plaintiff's available medical records, both before and since the insertion of the Dalkon Shield are in Missouri. Any relevant military records are stored in

**3.** In *Aiken* a District of Columbia resident, purchased an automobile from defendant, a Maryland dealership. Plaintiff alleged that misrepresentations made by defendant's salesman caused her injury in the District. While the misrepresentations were made in Maryland, the Court found that defendant solicited business in the District and derived substantial revenues from goods consumed there, and that these contacts, albeit unrelated to the tort alleged, were sufficient for the Court to exercise jurisdiction under § 13–423(a)(4).

that area and all defendants are within the jurisdiction of the United States District Court for the Eastern District of Missouri. Moreover, the plaintiff and her husband live in Missouri and lead counsel in the case has his office in San Francisco, California.[4]

For all of the above reasons it is quite clear that this case should be transferred to the Eastern District of Missouri, Eastern Division, for the convenience of the parties and the witnesses.

### IV

One final issue which the Court must address is whether, in view of its decision to transfer the case to the Eastern District of Missouri, the motion to dismiss filed by Searle should be granted. Searle has moved to dismiss for lack of personal jurisdiction, and the Court has found that indeed there is no personal jurisdiction over that defendant. *See* Part II, *supra.* While the parties have not addressed the issue of a transfer of the case to include Searle where the Court does not have personal jurisdiction over that defendant, it is clear that the Court may transfer the case without dismissing the defendant for lack of personal jurisdiction. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099 (5th Cir.1981); *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77 (2d Cir.1978); *Dubin v. United States,* 380 F.2d 813 (5th Cir.1967); *Brown v. Grimm,* 483 F.Supp. 40 (N.D.Ill.1979); *Rollins v. Proctor & Schwartz,* 478 F.Supp. 1137 (D S.C.1979); *Textile Museum v. F. Eberstadt & Co., Inc.,* 440 F.Supp. 30 (D D.C.1977).

■ After giving careful consideration to the above authorities this Court concludes that Searle's motion to dismiss should be denied and the case, including the claims against Searle, transferred to the Eastern District of Missouri.

***

4. Indeed, lead counsel came from San Francisco, California, to argue in opposition to the

### V

After giving careful consideration to all of the above factors, the Court concludes that the motion to dismiss filed by Robins should be denied, the motion to dismiss filed by Searle should be denied, and the motion to transfer pursuant to 28 U.S.C. § 1404(a) should be granted, and the case transferred to the Eastern District of Missouri, Eastern Division. While the Court will not address the pending discovery motions in view of its decision to transfer, it notes that a number of those motions may be moot in view of the disposition in this case, but in any event, the Court will stay discovery until the case has been effectively transferred to the Eastern District of Missouri, Eastern Division.

An appropriate Order shall issue.