Harold MARSH, Plaintiff-Appellant,

v.

William A. KITCHEN and Ray T. Zakovich, Defendants-Appellees, and United States of America et al., Defendants.

No. 822, Docket 73-1040.

United States Court of Appeals, Second Circuit.

Argued May 8, 1973.

Decided June 18, 1973.

Howard B. Weinreich, New York City (Harold Baer, Jr., Jay M. Rosengarten, and Guggenheimer & Untermyer, New York City, on the brief), for plaintiff-appellant.

Frank H. Wohl, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., and A. W. Fargo, III, Asst. U. S. Atty., New York City, on the brief), for defendants-appellees.

Before SMITH, MULLIGAN and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from summary judgment entered in the Southern District of New York, Inzer B. Wyatt, District Judge, dismissing the action against three federal law enforcement officers stationed in Missouri and served there with process, the essential issue is the propriety of the district court's holding

that it did not have personal jurisdiction over the Missouri defendants pursuant to the New York long arm statute, CPLR § 302(a)(1) and (2) (McKinney 1972).

Since we agree with the district court's application of the law to the undisputed facts, we affirm.

## I.

In April 1971, plaintiff Harold Marsh, a resident of New York, made a trip to Missouri. He flew to Kansas City, Missouri, rented an automobile at the airport, and drove to St. Joseph, Missouri, where he remained for a time. He then returned to New York.

At about the time Marsh was in Missouri, defendant Ray T. Zakovich, a special agent of the United States Secret Service stationed in Kansas City, Missouri, was conducting an investigation involving the passing of counterfeit currency in Missouri. As a result of what turned out to be mistaken identification, Zakovich on April 21 swore to a complaint before a United States Commissioner in the Western District of Missouri charging Marsh with passing three counterfeit $20 notes in violation of 18 U.S.C. § 472 (1970). Defendant William A. Kitchen, an Assistant United States Attorney for the Western District of Missouri, authorized Zakovich to file the complaint.

On the same day, April 21, based on Zakovich's complaint, the Commissioner issued a warrant for the arrest of Marsh.[1] By this time Marsh had returned to New York; so the Secret Service office in Kansas City by teletype notified the Secret Service office in New York that the warrant had been issued. Later the same day, defendants James Coppola and Michael Reilly, Secret Service agents stationed in New York, arrested Marsh at his place of business at Lake Success, New York. He was arraigned the same day.

On the next morning, April 22, Kitchen and Zakovich in Missouri discovered the mistake in identification. The complaint was immediately dismissed. They promptly communicated with the Secret Service office in New York in an attempt to prevent the arrest but it was too late. All proceedings against Marsh were terminated on the morning of April 22. On May 4, Kitchen wrote to Marsh's attorney explaining how the mistake had occurred and apologizing for any embarrassment and inconvenience caused Marsh.

Ten months later, on March 16, 1972, Marsh commenced the instant action in the Southern District of New York to recover $200,000 damages claimed to have been sustained as the result of violations of his constitutional rights and violations of New York law.[2] The com-

---

1. The warrant was the standard Commissioner's Warrant of Arrest and set forth the following command:

    "To any U.S. Marshal or any other authorized officer:

    You are hereby commanded to arrest Harold Marsh, and bring him forthwith before the nearest available United States Commissioner to answer to a complaint charging him with passing and uttering and publishing falsely made obligation or other security of the United States . . . in violation of U.S.C. Title 18, Section 472."

2. The complaint alleges two groups of claims, each as a separate cause of action.

    As a first cause of action, the complaint alleges violation of Marsh's constitutional rights: to be secure against unreasonable searches and seizures (Fourth Amendment); to be free from deprivation of liberty without due process of law (Fifth Amendment); to assistance of counsel (Sixth Amendment); and to privacy (Ninth Amendment). These claims are grounded on the principles established in Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Federal question jurisdiction is asserted pursuant to 28 U.S.C. § 1331(a) (1970).

    As a second cause of action, the complaint alleges slander, defamation of character, invasion of privacy, false arrest, abuse of process, and malicious prosecution—all in violation of the law of the State of New York. Pendent jurisdiction is asserted with respect to these state claims. United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

plaint named as defendants the United States and eight individuals. Of the latter, process was served personally on the three Missouri defendants at Kansas City, Missouri.[3]

After the pleadings were closed and certain discovery was completed, the three Missouri defendants on October 6, 1972 filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on the grounds that the court lacked personal jurisdiction over them, that service of process on them was insufficient and that venue as to them was improper. Treating the motion as one for summary judgment since matters outside the pleadings were presented to and considered by the court, Judge Wyatt on November 27 filed an opinion granting summary judgment in favor of the Missouri defendants; dismissing the action against them on the ground that the court lacked personal jurisdiction over them; and directing that final judgment be entered as to them pursuant to Fed.R.Civ.P. 54(b).[4]

## II.

▌ Not only are the controlling facts not in dispute, but the parties agree that CPLR § 302(a)(1) and (2),[5] which deals with personal jurisdiction with respect to acts of non-domiciliaries, also is controlling.[6]

▌ The record establishes that neither Kitchen nor Zakovich ever entered New York. They therefore could not have transacted business or committed a tortious act within the state *in person*. Marsh so concedes. He nevertheless argues that appellees transacted business and committed tortious acts in New York *through their agents*, within the meaning of Section 302(a)(1) and (2). He argues that the government agents who arrested and processed him in New York were the personal agents of appellees. Therefore, so the argument goes, the actions of these New York agents are attributable to appellees and provide the basis for personal jurisdiction over appellees.

New York law is clear as to what constitutes an agency relationship for purposes of Section 302(a). In Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y. 2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970), a decision relied on by both sides as determinative, the New York

---

3. The three Missouri defendants referred are Kitchen, Zakovich and Burt C. Hurn, United States Attorney for the Western District of Missouri.

   The other named individual defendants are: Robert A. Morse, United States Attorney for the Eastern District of New York; A. E. Whitaker, Chief of the United States Secret Service in New York City; James Coppola, Michael Reilly and James D'Amelio, Secret Service agents stationed in New York City.

4. Plaintiff has not appealed from the judgment to the extent that it dismissed the action against defendant Hurn.

5. CPLR § 302(a)(1) and (2) provides in relevant part:

   "(a) **Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

   1. transacts any business within the state; or

   2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; . . . ."

6. By now it is well recognized that in both diversity and federal question cases a district court is authorized, pursuant to Fed.R.Civ.P. 4(e) and (f), to look to state law to determine in what manner and under what circumstances a party not present in the forum state can be subjected to the jurisdiction of a federal district court. United States v. First National City Bank, 379 U.S. 378, 381 (1965); United States v. Montreal Trust Co., 358 F.2d 239, 242–44 (2 Cir. 1966), cert. denied, 384 U.S. 919 (1966); Olin Mathieson Chemical Corp. v. Molins Organizations, Ltd., 261 F.Supp. 436, 441 (E.D. Va.1966); Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 231 (D.N.J.1966); Hoffman Motors Corp. v. Alfa Romeo S.p.A., 244 F.Supp. 70, 78–80 (S.D.N.Y.1965); Metropolitan Sanitary District of Greater Chicago v. General Electric Co., 35 F.R.D. 131, 135–36 (N.D.Ill.1964).

Court of Appeals held that a traditional agency relationship must exist between the non-domiciliary and the alleged agent. There a non-domiciliary arranged to "attend" a New York auction via telephone by having an employee of the auctioneer relay bids to the non-domiciliary and by placing any bids he chose to make. The Court of Appeals relied upon the common law doctrine of the "borrowed-servant" to hold that, while a person may be in the general employ of another (the auctioneer), he could be loaned, for a given instance, to another (the non-domiciliary) as his agent. Considering the lengths to which the court went in *Parke-Bernet* to spell out a traditional common law agency relationship, it is doubtful that an unconventional agency relationship such as that asserted by appellant in the instant case, with no support in precedent, would provide a basis for personal jurisdiction under Section 302(a). McLaughlin, Practice Commentaries to CPLR 302, at 66–68 (McKinney 1972).

No such traditional agency relationship existed between appellees and the New York-based government agents. Appellees and the Secret Service agents stationed in New York are agents of a common principal—the United States—and not of each other. Each of the individual defendants in the instant case was required as part of his official duties as an agent of the United States to seek out and arrest violators of federal law. Because in this case the suspected perpetrator committed a crime in Missouri and then travelled to New

York, it was necessary to use federal agents in both states to effect his capture.

In no way, however, did the New York officers become agents of appellees. The notification by teletype that an arrest warrant had been issued certainly did not create an agency relationship. Gildenhorn v. Lums, Inc., 335 F.Supp. 329, 334–35 (S.D.N.Y.1971). It merely served to inform the New York agents as to certain action that had been taken in Missouri by other federal agents that was of concern to the New York agents. Furthermore, the New York agents were not acting on behalf of and subject to the control of appellees. Appellees did not stand to benefit from the arrest of Marsh. See Leasco Data Processing Equipment Corp. v. Maxwell, 319 F. Supp. 1256, 1260–62 (S.D.N.Y.1970), modified, 468 F.2d 1326 (2 Cir. 1972). Only the United States government acting in the public interest stood to benefit. The New York agents were under the control of the warrant, which commanded the arrest of Marsh, and of· their own superiors in New York, who directed how and when the arrest should be made. Under the circumstances, the Secret Service agents located in New York were not acting as agents of appellees in executing the warrant for the arrest of Marsh.[7]

We hold that appellees did not transact business, nor did they commit tortious acts, in New York in person or though their agents within the meaning of Section 302(a)(1) or (2).[8] The dis-

---

7. The New York courts have rejected ingenious attempts, such as the instant one, to construct an agency relationship. In Inkelas v. Inkelas, 58 Misc.2d 340, 295 N.Y.S.2d 350 (Sup.Ct., Bronx Co., 1968), for example, an abandoned wife sued her non-domiciliary husband to recover money she had expended to purchase necessaries for herself and her children. She contended that, since the law implies a promise by the husband to pay for necessaries, she therefore was acting as his agent in purchasing the necessaries. The argument was rejected.

8. Although the parties have not raised the issue before us, since it is a jurisdictional matter we have considered whether federal law might authorize the district court to exercise personal jurisdiction over appellees. We recognize that Congress may provide for service of process anywhere within the United States. See, e. g., Mississippi Publishing Corp. v. Murphree, 326 U.S. 438 (1946); Robertson v. Railroad Labor Board, 268 U.S. 619 (1925); Toland v. Sprague, 37 U.S. (12 Pet.) 300 (1838). But in the absence of a federal statute, or a procedural rule having the

trict court did not have jurisdiction over the persons of appellees. Accordingly, the action was properly dismissed against them.

Affirmed.

force of a statute, authorizing service of process on non-domiciliaries, such service is unavailable. See, e. g., Beaty v. M. S. Steel Co., 401 F.2d 157, 161 n. 4 (4 Cir. 1968), cert. denied, 393 U.S. 1049 (1969) ; Heiser Ready Mix Co. v. Fenton, 265 F.2d 277, 279 (7 Cir. 1959) ; Connor v. Miller, 178 F.2d 755 (2 Cir. 1949). But see Lone Star Package Car Co. v. Baltimore & Ohio Railroad Co., 212 F.2d 147, 153–55 (5 Cir. 1954). We have not found any federal statute or procedural rule which, either expressly or upon proper interpretation, authorizes extraterritorial service of process under the circumstances of this case.