**Martin EISENBERG et al.**

v.

**David MATHEWS et al.**

**Civ. A. No. 75–676.**

United States District Court,
E. D. Pennsylvania.

Sept. 27, 1976.

Ronald Ziegler, Philadelphia, Pa., for plaintiffs.

Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for federal defendants.

Howard Holmes, Asst. Atty. Gen., Dept. of Justice, Philadelphia, Pa., for state defendants.

## OPINION

DITTER, District Judge.

Plaintiffs are Medicare equipment suppliers. Payments to them were suspended on the grounds that they had presented false claims. Presently before the court is the question of whether plaintiffs are entitled to an administrative hearing on these charges. I conclude that they are and will grant the relief they seek.

This suit was brought by Martin Eisenberg, a pharmacist licensed by the Commonwealth of Pennsylvania, and Charlar, Inc.[1] (hereafter Martin's), which are engaged in the business of selling and renting durable medical equipment.[2] The defendants are the Secretary and officials of the Department of Health, Education and Welfare (HEW), federal defendants; the Commissioner for Medical Programs of the Pennsylvania Department of Public Welfare, state defendant; and the manager of Pennsylvania Blue Shield's Government Programs, Utilization Department, which is the Federal Medicare intermediary for payment of pharmacist's claims in Pennsylvania.[3] The present controversy was brought before the court on cross-motions for summary judgment on the issue of liability, filed by the plaintiffs and the state defendant, Roger Cutt.

Up to the time of their suspension, the plaintiffs provided durable medical equipment to Medicare beneficiaries enrolled under Part B of the Medicare Act, 42 U.S.C. § 1395 et seq. These beneficiaries assigned to plaintiffs their claims for reimbursement for the purchase or rental of this equipment; subsequently, plaintiffs presented these claims to Pennsylvania Blue Shield for payment.[4] In October, 1972, an investigation conducted by Blue Shield and the Regional Office of the Bureau of Health Insurance, Social Security Administration, disclosed deficiencies in some of the claims presented by plaintiffs, irregularities which could have subjected plaintiffs to criminal prosecution under 18 U.S.C. § 1001 and the False Claims Act, 31 U.S.C. § 231.[5] On

1. Charlar, Inc. is a Pennsylvania corporation trading as Martin's Medical Equipment Unlimited (Martin's), of which Martin Eisenberg is a controlling stockholder.

2. Durable medical equipment, as defined by 42 U.S.C. § 1395x(s)(6), includes iron lungs, oxygen tents, hospital beds and wheelchairs used in a patient's home.

3. The Medicare program is administered by the United States Department of Health, Education and Welfare (HEW). In order to foster efficient administration, the Secretary of HEW has been authorized to enter into contracts delegat-

ing certain responsibilities to health insurance carriers to act as intermediaries between the supplier and the Secretary. Part of the responsibility given to the carrier is the auditing of records and claims of the supplier in order to determine if proper payments are being made to the claimant. 42 U.S.C. § 1395u.

4. See Affidavit of Manuel Levine, paragraph 4.

5. The Secretary has conceded that he does not intend to prosecute plaintiffs for any criminal violations, although the matter was presented to an investigating grand jury in November, 1974.

January 29, 1974, some fifteen months after commencement of the investigation, plaintiff Eisenberg was notified that claims totalling $1890.32 had been deemed improper. Ten days later Medicare reimbursement to plaintiffs was "suspended"[6] pending completion of the investigation. A hearing was held on February 21, 1974, at which time Mr. Eisenberg and representatives of Blue Shield and HEW's Regional Office met to discuss the investigation. Mr. Eisenberg was afforded the opportunity to explain why the alleged discrepancies existed, but his explanations were "not satisfactory"[7] and the suspension remained in effect. In addition, the Secretary withheld reimbursement on all of the outstanding claims which had been submitted by plaintiffs.[8] Following repeated requests for a hearing in regard to these other claims, plaintiffs filed the instant complaint alleging violations of their Fifth Amendment due process rights and damages in excess of $10,000.[9]

## I. The Federal Defendants

■ The federal defendants first challenge this court's jurisdiction and assert that, even assuming jurisdiction, no cause of action has been advanced by plaintiffs.

They contend that under the rationale of Bivens v. Six Unknown Named Agents,[10] 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), jurisdiction under 28 U.S.C. § 1331 would require the existence of an implied cause of action for the alleged Fifth Amendment violations. They argue that no case has applied the Bivens reasoning to Fifth Amendment circumstances. Quite to the contrary, several courts have considered this question, and the majority have held that Fifth Amendment claims are cognizable as causes of action under the rationale of Bivens. In U. S. ex rel. Moore v. Koelzer, 457 F.2d 892, 894 (3d Cir. 1972), Judge Green, sitting by designation, held that Bivens "recognizes a cause of action for damages for violation of constitutionally protected interests, and is not limited to Fourth Amendment violations." These cases reason that the rights protected by both the First and the Fifth Amendments ". . . are no less important than the rights protected by the Fourth Amendment, and in fact, are interrelated. Stanford v. Texas, 379 U.S. 476, 484–485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

The reasoning of these cases is, indeed, persuasive. If the Supreme Court is will-

6. See Affidavit of Manuel Levine, paragraphs 7 and 8. The federal defendants contend that plaintiffs have not been suspended from the privilege of being reimbursed on claims assigned to them by Medicare beneficiaries. Whatever the distinction, however, I find that the plaintiffs have been effectively excluded from participation in the program.

7. See Affidavit of Manuel Levine, paragraph 9.

8. It is far from certain what the actual amount of payments withheld totals. The Government contends that the sum is only $28,000., while plaintiffs maintain that $58,000. has been retained. The complaint alleges an amount of approximately $40,000.

9. Initially, plaintiffs invoked the jurisdiction of this court pursuant to 42 U.S.C. § 1983, its jurisdictional implement, 28 U.S.C. § 1343(3), and due process claims under the Fourteenth Amendment, requesting a permanent injunction reinstating them as participants in the Medicare program and the recovery of payments due but withheld by the federal defendants. Out-of-pocket damages of $25,000 and $300,000 in punitive damages were also demanded from all defendants.

Subsequent to the federal defendants' response that none of the grounds cited gave this court jurisdiction over federal agency action, District of Columbia v. Carter, 409 U.S. 418, 424–425, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973), plaintiffs sought and were granted leave to amend their complaint to allege jurisdiction under 28 U.S.C. § 1331(a) and 28 U.S.C. § 1361 as to the federal defendants. In addition, at oral argument, plaintiffs asked that if the payments were not to be released that they at least be afforded the opportunity for a hearing to be informed of the charges against them and the circumstances necessitating such withholding. For this reason, I have disregarded plaintiffs' other demands and shall consider only the request for a hearing and the turnover of the payments withheld, and Mr. Cutt's motion for summary judgment.

10. In Bivens, the Supreme Court held that the right to be secure from unreasonable searches and seizures under the Fourth Amendment would support a federal cause of action for damages resulting from a violation of that right.

**1278**

ing to recognize a federal cause of action for the deprivation of rights guaranteed by the Fourth Amendment, it would be illogical to interpret that decision so narrowly as to limit it only to the Fourth Amendment and preclude causes of action on equally important rights guaranteed by the First and Fifth Amendments."

*Revis v. Laird,* 391 F.Supp. 1133, 1139 (E.D. Cal.1975).[11]

Since a cause of action is recognized for Fifth Amendment due process violations and damages in excess of $10,000 have been alleged, jurisdiction lies in this court under 28 U.S.C. § 1331.[12] The question remains, however, as to whether the merits of the case entitle the plaintiffs to the relief they seek.

■ Plaintiffs first contend that the federal defendants violated the provisions of the Social Security Act, 42 U.S.C. § 301 et seq., by failing to follow properly the notice and hearing procedures outlined in 42 U.S.C. § 1395y(d)(3) and 20 C.F.R. § 405.-371(a). These sections provide that any claimant who is denied reimbursement when the Secretary, acting through the carrier, determines that the claimant has been overpaid [13] shall be entitled to reasonable notice, a hearing, and judicial review. However, the defendants correctly point out that the Secretary may dispense with the notice and hearing requirements when the "intermediary or carrier has reliable evidence that the circumstances giving rise to the need for a suspension of payments involves fraud or willful misrepresentation." 20 C.F.R. § 405.371(b). Since alleged reliable evidence of fraud was uncovered by Blue Shield as to those claims totalling $1890.32, it was perfectly proper for the Secretary to suspend plaintiffs from participation in the program without a prior hearing. Nevertheless, plaintiffs were afforded a hearing, although it may have been informal, before Blue Shield and HEW Regional Office representatives to discuss the alleged discrepancies discovered in the claims and were given an opportunity to respond to each irregularity.

It is interesting to note that suspensions other than for fraud or willful misrepresentation remain in effect until the carrier makes a determination as to whether overpayments exist and if so, in what amount. Such a determination is to be expedited. When this calculation is made, the suspension is either to be rescinded or remain in effect until the overpayments have been liquidated. 20 C.F.R. § 405.373(b). However, the provisions of this section do not apply to suspensions where, as in this case, there is alleged reliable evidence of fraud or wilful misrepresentation on the claimant's part. 20 C.F.R. § 405.373(c). Thus, the federal defendants can not be held liable in damages for properly following the rules and regulations promulgated under the Act.

■ Plaintiffs next argue that depriving them of their earned right to reimbursement for the services they have al-

---

11. Accord, *Paton v. LaPrade,* 524 F.2d 862, 869 (3d Cir. 1975); *Yiamouyiannis v. Chemical Abstracts Service,* 521 F.2d 1392, 1393 (6th Cir. 1975); *Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926, 932 (10th Cir. 1975); *Singleton v. Vance County Board of Education,* 501 F.2d 429, 433 (4th Cir. 1974); *States Marine Lines, Inc. v. Shultz,* 498 F.2d 1146, 1156–57 (4th Cir. 1974); *Marsh v. Kitchen,* 480 F.2d 1270, 1271 n. 2 (2d Cir. 1973); *Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 478 F.2d 938, 965, cert. denied 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *Bethea v. Reid,* 445 F.2d 1163, 1165 (3d Cir. 1971), cert. denied 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972); *Gardels v. Murphy,* 377 F.Supp. 1389, 1398 (N.D.Ill.1974); *Butler v. United States,* 365 F.Supp. 1035, 1039 (D.Haw. 1973).

12. Because I find that jurisdiction lies under the federal question statute, I need not discuss the Government's challenge to jurisdiction under 28 U.S.C. § 1361.

13. Specifically, no payment will be made to a claimant if the Secretary determines that the claimant has (1) wilfully and knowingly submitted false claims, (2) submitted requests for payment substantially in excess of the claimant's customary charges, or (3) furnished services substantially in excess of the needs of individuals or of grossly inferior quality or harmful to individuals. 42 U.S.C. § 1395y(d) (2). . . . . .

ready provided under the program is a denial of their due process rights. Of course, procedural due process protections apply when there has been interference with a property right. As *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 787 (1970) and *Cafeteria & Restaurant Workers Union, etc. v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961), make clear, the conflicting values between the private interest affected by the agency action and the governmental interest in a summary determination affecting that private interest must be weighed in each case. *Langhorne Gardens, Inc. v. Weinberger*, 371 F.Supp. 1216, 1219 (E.D. Pa.1974). These decisions, even if not precisely on point with the instant matter, point to the recent expansion in Fifth Amendment protections. See *Coral Gables Convalescent Home, Inc. v. Richardson*, 340 F.Supp. 646, 649 n. 1 (S.D.Fla.1972).

■ Plaintiffs' interest in securing a hearing is substantial. The recovery of the amount claimed, whether it be from the Government or from individual beneficiaries, is of paramount importance to the plaintiffs. Even though, as the Government has pointed out, see note 7 supra, plaintiffs may look to the individual beneficiaries for recovery of the claims, it "is not inconceivable that the demise, unavailability, or poverty of the beneficiaries of the services represented by those claims will present substantial obstacles to the actual collection of any monies due." [footnote omitted]. *Langhorne Gardens, Inc. v. Weinberger*, supra, 371 F.Supp. at 1220. In addition, plaintiffs have an interest in removing the stigma of fraud and impropriety placed upon them by the suspension and in clearing their names to permit further Medicare business. Finally, this is a dispute that has been carried on for well over two years. In and of itself, that period of time has worked to plaintiffs' disadvantage and is a persuasive reason to get the basic contentions aired and decided.

Plaintiffs' interest in this case clearly outweighs the government's interest in summary adjudication of the whole proceeding. If the dispute only involved a pre-termination hearing, I would find that the Secretary's interest in insuring that those suspected of submitting fraudulent claims be eliminated from the program to avoid future abuses would be of greater importance than plaintiffs' due process rights. However, such is not the case here. Plaintiffs have been denied a post-termination hearing for over two years, and during that period have been placed in limbo awaiting the Secretary's determination of an amount alleged to have been overpaid. In any event, if this determination is challenged some sort of hearing will eventually have to be afforded the plaintiffs or else the Secretary's findings, however and whenever made, whether just or capricious, would never be subject to challenge. I cannot believe that Congress, when enacting the provisions of 42 U.S.C. § 1395y, intended such a result.

The federal defendants have not advanced any compelling reason why plaintiffs should not be afforded some type of agency hearing. Instead, they first rely on *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.), cert. denied 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47, rhg. denied 423 U.S. 991, 96 S.Ct. 406, 46 L.Ed.2d 311 (1975), where the court held that a similar suspension did not violate the due process clause of the Fifth Amendment. While I agree that the facts in that case, including the time period involved between the suspension and the court's decision, justified the court's finding that the suspension did not violate due process, the facts in the present matter certainly make the cases distinguishable. In *Peterson*, the court issued a preliminary injunction in the plaintiff's favor and permitted him to post a bond and recover the withheld payments. It was only after his conviction on criminal charges that the court dissolved the injunction and required return of the payments. Here, plaintiffs have not had the benefit of a prior court proceeding in order to secure an injunction, nor have they in any way been entitled to possession of the withheld payments. In addition, criminal proceedings have not and will not be brought. See Note 6, supra.

■ Second, the federal defendants contend that they have acted within the limits of their authority and are therefore entitled to governmental immunity.

"[I]n varying scope, a qualified immunity is available to officers of the executive branch of Government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." *Scheuer v. Rhodes*, 416 U.S. 232, 247–248, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974).

However, I cannot in this case hold that these officials are still acting within the perimeters of their duties and discretion. They were well within their authority in withholding the payments initially, for the offsetting of obligations against alleged overpayments is a device clearly available to the Secretary. *Wilson Clinic & Hosp., Inc. v. Blue Cross of South Carolina*, 494 F.2d 50, 52 (4th Cir. 1974). Still, over two years has passed since any action has been taken. Even though the defendants continue to support their position on assertions that a determination of the final amount of overpayments will eventually be made, I am convinced that plaintiffs' repeated requests for a speedy determination can no longer properly be deferred.

Therefore, I hold that the plaintiffs are entitled to an administrative hearing before the Secretary so they may be informed of and respond to the precise charges against them.

## II. *State Defendant Roger Cutt*

Also before the court is defendant Cutt's motion for summary judgment. Mr. Cutt, as Commissioner for Medical Programs of the Pennsylvania Department of Public Welfare, is the only state defendant.

Those facts involving Cutt may be briefly stated as follows. On October 22, 1974, the Department of Public Welfare of the Commonwealth of Pennsylvania was notified by the Bureau of Health Insurance (HEW) that Martin's Medical Equipment had been suspended from the Medicare program, effective February 29, 1974. On December 9, 1974, Mr. Cutt, in his capacity as Commissioner and acting pursuant to 42 U.S.C. § 1396b(i),[14] sent notice to Martin's Medical Equipment of its suspension from Pennsylvania's Medical Assistance Program (Medicaid). Acting on his own, Mr. Cutt had the case reviewed and, upon finding that Martin's had only been suspended from payments and not participation under the program, see note 7 supra, rescinded the state suspension on January 14, 1975. During this five week period, plaintiffs did not submit any invoices to the Department of Public Welfare for services rendered under the Medicaid program.[15]

Plaintiffs sole ground for proceeding against defendant Cutt is that he had been in consultation with the federal defendants regarding plaintiffs' suspension from the Medicare program and that he allegedly participated with them in the suspension. Without rendering a decision on defendant's other arguments,[16] I find that his mo-

14. 42 U.S.C. § 1396b(i) provides in relevant part:
"Payment under the preceding provisions of this section shall not be made  .    .    .
(2) with respect to any amount paid for services furnished under the plan after December 31, 1972, by a provider or other person during any period of time, if payment may not be made under subchapter XVIII [Medicare Program] of this chapter with respect to services furnished by such provider or person during such period of time solely by reason of a determination by the Secretary under section 1395y(d)(1) of this title  .    .    . "

15. See Affidavit of Roger Cutt, par. 7, Exhibit B, Defendant's Motion for Summary Judgment.

16. Mr. Cutt's other arguments are 1) insufficient allegations of state action in plaintiffs' § 1983 claim, prohibiting this court from taking jurisdiction and 2) plaintiffs' failure to state a claim upon which relief can be granted.

tion for summary judgment should be granted by reason of official immunity, under the guidelines enumerated by *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).[17]

Non-judicial executive branch state officials now can be sued for damages and must defend on the grounds set forth in *Wood v. Strickland*, supra, if a violation of constitutional rights is found. *Skehan v. Board of Trustees of Bloomsburg State College et al.*, 538 F.2d 53, 62 (3d Cir. 1976). Under the *Wood v. Strickland* test, 95 S.Ct. at 1001, I must determine whether defendant Cutt has met his burden of establishing 1) that he did not know or reasonably would not have known that depriving plaintiffs of a pre-termination hearing before their Medicaid program suspension violated plaintiffs' right of due process, and 2) that he acted without a "malicious intention to cause a deprivation of constitutional rights or other injury" to the plaintiffs.

On the basis of statements made by the defendant in his affidavit, assertions which have gone unchallenged by the plaintiffs there is no doubt that the defendant has satisfied the *Wood v. Strickland* test. He acted according to established procedure in terminating plaintiffs from the Medicaid program and could not be expected to have known or reasonably should not have known that he was violating their due process rights. The fact that the defendant individually reviewed the termination and reinstated the plaintiffs certainly negates any possibility of maliciousness. Accord-

ingly, defendant Cutt's motion for summary judgment will be granted.

### III. *The Appropriate Relief*

For the reasons advanced, the Secretary will be ordered to turn over to plaintiffs the withheld payments immediately or schedule and hold an appropriate hearing within thirty days from the date of this opinion. Plaintiffs are entitled to written notice no less than ten days before the hearing date is set. Prior to this hearing, should it be scheduled, the plaintiffs shall be informed of the precise charges against them and shall be given a reasonable opportunity to respond to each at the hearing. In addition, within forty-five days after the hearing the Secretary shall render a final determination detailing the nature and extent of any claims found to be fraudulent and the amounts of any overpayments to plaintiffs that may have resulted.

Within ninety days of the date of this opinion, the Secretary and plaintiffs shall submit a status report, which shall include their recommendations, if any, as to whether further action by this court is necessary. I shall review the matter at that time.

---

17. Before *Wood v. Strickland*, this circuit assumed that there still existed an unqualified common law immunity for state government officials performing adjudicatory or "quasi-judicial" functions. See *Skehan v. Board of Trustees of Bloomsburg State College et al.*, 538 F.2d 53, 60 (3d Cir. 1976). If the conduct of these officials fell within the outer perimeter of their duties, authority and discretion, *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the same test as for federal officials, their acts could not be called into question in damage actions. Even if the act was ministerial in nature, they had a defense if they could show that they acted in good faith or that they acted with probable cause. *Fidtler v. Rundle*, 497 F.2d 794, 801 (3d Cir. 1974); *Bivens v. Six Unknown Named Agents*, 456 F.2d 1339, 1347–1348 (2d Cir. 1972).