**James LOTT, Plaintiff,**

v.

**BURNING TREE CLUB, INC., Defendant.**

**Civ. A. No. 80–2364.**

United States District Court, District of Columbia.

Dec. 22, 1980.

Howard M. Rensin, Hyattsville, Md., for plaintiff.

Laurence E. Carr, Jr., David P. Durbin, Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This matter is before the court on defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack

of personal jurisdiction. For the reasons that follow, we find that defendant's motion must be granted.

### Background

Plaintiff, a District of Columbia resident, is a former employee of defendant Burning Tree Club, Inc. (the Club), a private country club and Maryland corporation located in Bethesda. On December 17, 1979, the Club's office manager notified the Montgomery County, Maryland police that $1,600 had been stolen from the office's cash drawer. The Club's bartender told the police that he had seen plaintiff leaving the office around the time the money was taken. After an investigation, Maryland police obtained a warrant for plaintiff's arrest. The warrant was forwarded to the District of Columbia Metropolitan Police Department for service. In March, 1980 plaintiff was arrested in the District of Columbia and incarcerated briefly. He refused to waive extradition. Extradition proceedings were commenced and on May 7, 1980, plaintiff appeared at the Montgomery County Sheriff's Office. He was incarcerated for ten days and released on bail. The state's attorney subsequently entered a *nolle prosequi* to the theft charges filed against plaintiff.

Plaintiff then brought this diversity action for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Plaintiff asserts that personal jurisdiction over the Club exists pursuant to two provisions of the District of Columbia long-arm statute, District of Columbia Code §§ 13–423(a)(3) and (a)(4).[1] The Club now moves to dismiss on the grounds that this court lacks personal jurisdiction over it under either section of the long-arm statute relied on by plaintiff.

### Discussion

In order for a court properly to assert personal jurisdiction over a nonresident defendant, service of process on the nonresident must be both authorized by statute and within the limits set by the due process clause of the United States Constitution. *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 432 (D.C.Cir.1976), citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Federal courts are authorized pursuant to Federal Rules of Civil Procedure 4(e) and 4(f) to look to state law to determine in what manner and under what circumstances a nonresident party can be subjected to the jurisdiction of a federal district court. *See United States v. First National City Bank*, 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Gatewood v. Fiat, S. p. A.*, 617 F.2d 820, 822 n.3 (D.C.Cir.1980). We therefore must refer to the District of Columbia long-arm statute, D.C.Code § 13–423 (1973), to determine if plaintiff has met the threshold requirement of a *prima facie* showing of personal jurisdiction over the Club. The District of Columbia courts have interpreted the long-arm statute's scope to be coextensive with the limits of the due process clause. *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 810–811 (D.C.App.1976) (*en banc*); *Rose v. Silver*, 394 A.2d 1368, 1369 (D.C. App.1978). Nevertheless, a two-step analysis is required: we must first determine whether the long-arm statute permits the exercise of jurisdiction over defendant; if so, we then inquire whether the exercise of jurisdiction over defendant comports with constitutional due process requirements. *Gatewood v. Fiat, supra*, at 823; *Aiken v. Lustine Chevrolet, Inc.*, 392 F.Supp. 883, 884 (D.D.C.1975).

Plaintiff argues that this court may assert jurisdiction over the Club under either District of Columbia Code § 13–423(a)(3) or § 13–423(a)(4). Those sections provide:

(a) A District of Columbia court may exercise personal jurisdiction over a person,[2] who acts directly or by an agent, as

---

1. Plaintiff served the Club in Maryland by mail. *See* D.C.Code §§ 13–424, 13–431.

2. For the purposes of D.C.Code § 13–423, the definition of "person" includes foreign corporations. D.C.Code § 13–421 (1973).

to a claim for relief arising from the person's—

.    .    .    .    .

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

These proposed jurisdictional bases will be discussed in turn.

### Section 13–423(a)(3)—Tortious Act and Injury in the District

District of Columbia Code § 13–423(a)(3) authorizes jurisdiction over a person who causes tortious injury in the District of Columbia by an act or omission in the District. "The statute clearly separates the act from the tortious injury and affords personal jurisdiction over non-residents only when both act and injury occur in the District." *Margoles v. Johns*, 333 F.Supp. 942, 944–45 (D.D.C.1971), aff'd, 483 F.2d 1212 (D.C.Cir. 1973). The injury here may be inferred from plaintiff's uncontested allegation that he was arrested and detained by District of Columbia police officers in the District of Columbia.[3] The Club's only "acts," however, were reporting the theft to the Maryland police and cooperating in their investigation. Plaintiff alleges nonetheless that the Club acted "directly or through an agent in the District of Columbia." Plaintiff's Memorandum at 2. Specifically plaintiff argues that the Club designated the Montgomery County police as its "agent" and that both the referral of the warrant by Montgomery County police to the District of Columbia police and plaintiff's arrest and detention by the D. C. police therefore may be attributed to the Club. Plaintiff states, "[D]efendant knew that plaintiff was a resident of the District of Columbia and that his arrest would most likely be effected in the District of Columbia." Plaintiff's Memorandum at 3. Plaintiff relies on *Mandelkorn v. Patrick*, 359 F.Supp. 692 (D.D.C.1973), in which the court asserted jurisdiction over nonresident defendants who allegedly had conspired with District of Columbia police officers and others to deny the plaintiffs' constitutional rights. Since at least one of the overt acts in furtherance of the conspiracy had occurred in the District of Columbia, and since the nonresident defendants had not denied the conspiracy allegations,[4] the court held that the requirements of D.C.Code § 13–423(a)(3) had been met and asserted jurisdiction over the nonresident defendants even though they had no other contacts with the District. Implicit in this ruling is the fact that co-conspirators are recognized as agents of each other. *See id.* at 696.

Here, however, the complaint alleges no conspiracy. Furthermore, plaintiff's strained efforts to expand the definition of "agency" to encompass defendant's relationship to the District of Columbia and Maryland police here cannot support personal jurisdiction. This case is factually almost identical to *Marsh v. Kitchen*, 480 F.2d 1270 (2d Cir. 1973). Marsh, a New York resident, had visited Missouri while federal Secret Service agents were conducting an investigation into the passing of counterfeit currency. Based upon a mistaken identity, Missouri-based federal agents obtained a warrant for Marsh's arrest. Marsh had already returned to New York, so the Missouri officers contacted federal officers in New York who arrested him there. Marsh sued the Missouri officers in federal court in New York for deprivation

---

**3.** In addition, for purposes of this motion the Club "accepts Lott's assertion that he sustained injury here." Defendant's Memorandum at 5.

**4.** The court relied heavily on this fact:

It is emphasized, however, that the situation would be quite different on this point, if the [conspiracy] allegations of the complaint were controverted or if the facts should develop otherwise than as alleged.
359 F.Supp. at 697.

of constitutional rights, false arrest, and malicious prosecution. In affirming the district court's dismissal for lack of personal jurisdiction over the Missouri defendants, the United States Court of Appeals for the Second Circuit reviewed Marsh's argument for jurisdiction:

> The record establishes that neither [of the defendants/appellees] ever entered New York. They therefore could not have ... committed a tortious act within the state *in person.* Marsh so concedes. He nevertheless argues that appellees ... committed tortious acts in New York *through their agents,* within the meaning of [the New York long-arm statute, providing for jurisdiction over a person who "commits a tortious act within the state"]. He argues that the government agents who arrested and processed him in New York were the personal agents of appellees. Therefore, so the argument goes, the actions of these New York agents are attributable to appellees and provide the basis for personal jurisdiction over appellees.

*Id.* at 1272. The court then examined traditional agency doctrines to determine if Marsh's argument had merit. It concluded:

> No such traditional agency relationship existed between appellees and the New York-based government agents.... Each of the individual defendants in the instant case was required as part of his official duties as an agent of the United States to seek out and arrest violators of federal law. Because in this case the suspected perpetrator committed a crime in Missouri and then travelled to New York, it was necessary to use federal agents in both states to effect his capture.
>
> In no way, however, did the New York officers become agents of appellees. The notification ... that an arrest warrant had been issued certainly did not create an agency relationship.... Furthermore, the New York agents were not acting on behalf of and subject to the control of appellees.... The New York agents were under the control of the warrant, which commanded the arrest of

Marsh, and of their own superiors in New York, who directed how and when the arrest should be made.

*Id.* at 1273.

We find the court's reasoning in *Marsh* persuasive here. The Montgomery County and District of Columbia police did not act as agents of the Club; rather, they were agents for the law enforcement administrations of their respective jurisdictions. "Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and *subject to his control....*" Restatement (Second) of Agency § 1(1)(1957), *quoted in Rose v. Silver, supra,* at 137 (emphasis supplied by court). The Club exercised no "control" over the police officers. That the Club may have foreseen that plaintiff would be arrested in the District is not enough to constitute an agency relationship. *Cf. Security Bank, N. A. v. Tauber,* 347 F.Supp. 511, 514 (D.D.C.1972) (although defendant may have known the destination and purpose of the purported agent, he did not direct the "agent" to do anything on his behalf). *See also Marsh v. Kitchen, supra,* at 1273. It would be an unacceptable result to hold that, whenever law enforcement officers act on a citizen's complaint, they are automatically constituted that citizen's "agent." The absurdity of such a contention requires no comment.

Accordingly, we must conclude that the Club did not designate either the Montgomery County Police or the District of Columbia Metropolitan Police as its agents and that the Club's only act, placing a call to report a theft, occurred outside the District of Columbia. Personal jurisdiction over the Club therefore cannot be based on D.C.Code § 13–423(a)(3).

*Section 13–423(a)(4)—Injury within the District and Sufficient Contacts with the District*

██ Plaintiff argues, alternatively, that this court should assert jurisdiction over the Club under District of Columbia

Code § 13–423(a)(4) which permits jurisdiction over a party who *both* causes an injury in the District by an act or omission outside the District *and* has "some other reasonable connection" with the District. *Founding Church v. Verlag, supra,* at 432. This "connection" requirement may be met in three ways:

(1) by regularly doing or soliciting business in the District of Columbia;

(2) by engaging in any persistent course of conduct in the District; or

(3) by deriving substantial revenue from goods used or consumed, or services rendered, in the District.

*Gatewood v. Fiat, supra,* at 825. The requisite injury in the District need not arise from or have any connection with the business or conduct in the District. *Gatewood v. Fiat, supra,* at 824–25. *See also Margoles v. Johns, supra,* at 945–46.

Again, injury to plaintiff in the District may be assumed for purposes of defendant's motion to dismiss. Plaintiff argues that the second requirement for section (a)(4) is also met because some of the Club's members live in the District of Columbia, current Club members "are encouraged to solicit new members," and "[a]s a result of [current] members living in the District of Columbia substantial revenues are generated for the [Club by membership fees]." Plaintiff's Memorandum at 5–6.

■■ The Club concedes that some of its members reside in the District and that it is located in Bethesda, Maryland, near the District of Columbia. It denies, however, that it "solicits" members in the District or elsewhere. Defendant's Memorandum at 3–4; Affidavit of G. Duane Vieth, attached to Defendant's Reply Memorandum. Nor does the Club engage in any other conduct in the District that would meet section (a)(4)'s requirements. The Club is incorporated in Maryland, has no registered agent in the District, is not registered to do business in the District, maintains no office or other facilities, in the District, is not listed in District telephone directories, does not advertise in any publication in the District, does not pay District of Columbia taxes,

and does not derive any revenue from services rendered in the District. Affidavit of James P. Corrigan, attached to Defendant's Memorandum. Plaintiff has not offered any evidence to contradict these sworn statements by the Club except speculation that, "It being that Burning Tree Club members reside in the District of Columbia, there must then be a solicitation of business by these members sanctioned and encouraged by the Club. . . ." Plaintiff's Memorandum at 5. The burden of proof is on plaintiff to show the court a basis for the assertion of long-arm jurisdiction, and, although only a threshold *prima facie* showing is required, 2 Moore, Federal Practice ¶ 4.41–1[3], at 4–470–71 (1980), it is clear that plaintiff has failed to meet even that standard as to jurisdiction under D.C.Code § 13–423(a)(4).

### Conclusion

Plaintiff has failed to establish a *prima facie* basis for jurisdiction under either § 13–423(a)(3) or § 13–423(a)(4) of the District of Columbia Code. Since the preliminary requirement of showing an applicable statutory provision has not been met, we need not reach the constitutional question of whether the assertion of jurisdiction would offend due process. We therefore need not address plaintiff's reliance on the Supreme Court's constitutional analysis in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

An order consistent with the foregoing has been entered this day.