The **FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Kevin O'DONNELL, et al., Defendants.**

**Civ. A. No. 90–1034.**

United States District Court,
District of Columbia.

Aug. 26, 1991.

Joanne L. Conrath, Piper & Marbury, Baltimore, Md., for plaintiff.

George E. Tuttle, Jr., Springfield, Va., for O'Donnells.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Plaintiff the Federal Deposit Insurance Corporation ("FDIC") brought this action seeking judgment against eight defendants who allegedly are liable to the FDIC as guarantors of a defaulted promissory note. Each party presently has pending a motion before the Court. As discussed below, the Court will (1) grant the motion of defendant William Tutman for summary judgment; (2) deny the motion of the remaining seven defendants to dismiss for lack of subject matter jurisdiction; and (3) deny the motion of the FDIC for summary judgment.

### I. *Background*

This action arises out of a loan or loans from the now-defunct National Bank of Washington ("NBW") to a company known as Federal Micro Systems, Inc. ("FMS"). In July 1985, the eight defendants allegedly executed guarantees of FMS' debt to NBW.

On April 14, 1988, FMS filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia. In the Schedules filed with the Bankruptcy Court, NBW was listed as a creditor of FMS. On April 29, 1988, NBW filed a Proof of Claim against FMS for $199,177.31, plus interest and attorneys' fees.

On May 3, 1990, NBW instituted this action seeking from the eight defendants $220,628.72, plus interest and attorneys' fees, as payment on FMS' debts. On August 10, 1990, FDIC was appointed receiver for the insolvent NBW. On August 30, 1990, the Bankruptcy Court entered an order confirming FMS' Plan of Reorganiza-

tion. On November 13, 1990, FDIC was substituted as the named plaintiff in this action. FDIC alleges that FMS has failed to make payments on its debt as provided under the terms of its Reorganization Plan and that the defendants are personally liable for FMS' debt based upon their guaranty contracts.

### II. *Defendant Tutman's Summary Judgment Motion*

William Tutman is the president and sole stock owner of FMS. According to FDIC, Tutman is one of the eight guarantors of FMS' note. Tutman argues that the Reorganization Plan confirmed by the Bankruptcy Court released him from all liability for the debts of the FMS and bars this action by FDIC. FDIC responds that the Bankruptcy Court lacked authority to release the personal debts of a party who had not filed a petition for bankruptcy (a "nondebtor"), that the release, even if authorized, is unenforceable for lack of consideration, and that the Reorganization Plan should not be given *res judicata* effect because FDIC has filed a motion before the Bankruptcy Court to vacate the Plan based upon FMS' and Tutman's failure to adhere to its terms.

The Reorganization Plan confirmed by the Bankruptcy Court purports to release Tutman (referred to as the "Principal" of FMS) from all liability for the debts of FMS (referred to as the "Debtor"). The Plan provided that

"Confirmation of the Plan shall remise, release and discharge the Principal of the Debtor, his successors, heirs and assigns, from any and all manner of claims and demands whatsoever, which any Creditor now has or might or could have against the Principal personally, in connection with or related to the operation of the Debtor from 1985 to the Effective Date."

Tutman Exh. 9, ¶ 9.01.

FDIC argues that this provision of the Reorganization Plan cannot preclude FDIC's suit against Tutman because the Bankruptcy Court had no authority to discharge nondebtor Tutman of his liabilities for FMS' debts. FDIC relies upon § 524(e) of the Bankruptcy Code, which clearly pro-

vides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such a debt." 11 U.S.C. § 524(e).[1]

It should be noted that FDIC raises the issue of the Bankruptcy Court's jurisdiction for the first time. FMS filed three Disclosure Statements prior to confirmation of its proposed Reorganization Plan. NBW filed objections to the first two Disclosure Statements. Neither objection called into question the authority of the Bankruptcy Court to discharge Tutman's liabilities for FMS' debts.[2]

Following NBW's objections to FMS' Amended Disclosure Statement, FMS filed a Second Amended Disclosure Statement on January 5, 1990. Tutman Mem.Exh. 8. The Bankruptcy Court held a hearing on the Second Amended Disclosure Statement on July 3, 1990. No representative of either NBW or FDIC appeared at this hearing.[3] Although FDIC claims that it raised objections to the Second Amended Disclosure Statement prior to the hearing, including specific objections to the authority of the Bankruptcy Court to discharge Tutman's liabilities, FDIC has produced no evidence of such objections.[4] Further, in light of the facts that NBW had twice previously raised objections to FMS' Disclosure Statements, that none of these objections had raised the issue of the Bankruptcy Court's jurisdiction to discharge Tutman's liability, and that NBW and FDIC were represented by the same counsel throughout the proceedings, the Court finds it unlikely that FDIC raised a specific objection based upon the jurisdiction of the Bankruptcy Court.

The Bankruptcy Court orally confirmed FMS' Reorganization Plan at the July 3, 1990 hearing. Its order confirming the Plan was entered on August 29, 1990. FDIC did not appeal that order.

■ At issue before this Court is not whether the Bankruptcy Court had the authority to confirm a Reorganization Plan which purported to discharge the liabilities of nondebtor Tutman, but, rather, whether the Bankruptcy Court's August 29, 1990 order should be given *res judicata* effect and should preclude FDIC's present action against Tutman based upon his guaranty of FMS' debts. The Court finds that the order of the Bankruptcy Court should be given *res judicata* effect.

The Court is persuaded by the decision of the Fifth Circuit in *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987), which held that although a Bankruptcy Court's discharge of the liabilities of nondebtor

---

1. Section 524(e) contains an exception for property of spouses which is not relevant here.

2. On June 23, 1989, NBW filed the following objection:

   The proposed Disclosure Statement fails to identify many key provisions of the Plan of Reorganization including, for example, the release of the principals and guarantors which is provided in Article of the Plan.

   *In re: Federal Micro Systems, Inc.*, Case No. 88–00744–AB, at 1, ¶ 3 (Bankr.E.D.Va. June 23, 1989) (Objection to Disclosure Statement), attached as Tutman Mem. Exh. 5.

   FMS amended its Disclosure Statement following NBW's objections. On October 2, 1989, NBW served on FMS its objections to FMS' Amended Disclosure Statement, including the following objection:

   The proposed Amended Disclosure Statement contains an inadequate description of the release provision contained in the Plan of Reorganization. Although the release provision is mentioned, no mention is made of the specific individuals which are proposed to be released under Article IX of the Plan.

*In re: Federal Micro Systems, Inc.*, Case No. 88–00744–AB, at 2–3, ¶ 6 (Bankr.E.D.Va.1989) (Objection to Amended Disclosure Statement), attached as Tutman Mem. Exh. 7.

3. At the time of the hearing, FDIC was in the process of assuming operations of NBW and was ultimately appointed receiver for NBW on August 10, 1990. The same counsel has represented both NBW and FDIC at all relevant stages of this matter.

4. The only reference to an FDIC objection to the Second Amended Disclosure Statement appears in the affidavit of Stephen H. Mims, FMS' attorney during the bankruptcy proceedings. Mims represented to the Bankruptcy Court at the July 3, 1990 hearing that "FDIC had recently taken over NBW and that written objections to the Plan had been filed." Tutman Mem. Exh. 3 at 1, ¶ 6. The Bankruptcy Court then inquired whether representatives of NBW or FDIC were present, and, upon finding that they were not, the Court confirmed FMS' proposed Reorganization Plan in accordance with the Second Amended Disclosure Statement. *Id.*

may be in excess of its statutory authority, the discharge nonetheless may be given *res judicata* effect and cannot be attacked collaterally in lieu of a direct appeal.

Although section 524 has generally been interpreted to preclude release of guarantors by a bankruptcy court, the statute does not by its specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of a plan of reorganization. Regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed. [Plaintiff] Republic, in effect, is now seeking to appeal the confirmed Plan and asking us to review it on its merits. Questions of the propriety or legality of the bankruptcy court confirmation order are indeed properly addressable on direct appeal. Republic, however, is now foreclosed from that avenue of review because it chose not to pursue it.

*Id.* at 1050 (footnote omitted). The Court then examined the four

well settled elements necessary for application of *res judicata:* "[T]he parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases."

*Id.* at 1051 (citation omitted).

Turning to the facts of this case, it is obvious that the first and third elements of collateral estoppel are satisfied. FDIC and Tutman both were parties to the Bankruptcy Court proceeding, and both had the opportunity to appeal from that Court's final order confirming the Reorganization Plan. The Court also finds the fourth element—that the same cause of action is involved in both proceedings—to be present. The *Republic Supply* Court applied the transactional test to determine whether the same cause was present in both actions:

When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

815 F.2d at 1053 (quoting *Restatement (Second) of Torts* § 24). The Bankruptcy Court's August 29, 1990 order expressly discharged Tutman of liability for the debts of FMS. The Court finds that the guaranty that FDIC now seeks to enforce is the same guaranty that was the subject of the Bankruptcy Court order, and thus that the same cause of action is present in both actions.

Whether the second element—that the prior judgment was rendered by a court of competent jurisdiction—is present in this action is disputed by the parties. FDIC argues that because the Bankruptcy Court had no authority to release Tutman of his guaranty obligations, the August 29, 1990 order confirming FMS' Reorganization Plan was not rendered by a court of competent jurisdiction. Upon examining the relevant case law, the Court finds to the contrary.

In *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), a bankruptcy court confirmed a reorganization plan which discharged the liability of the guarantors of bonds issued by the debtor. *Id.* at 168, 59 S.Ct. at 136. The plan was confirmed over the objection of the debtor's bondholders, who did not appeal the bankruptcy court's order. *Id.* at 169, 59 S.Ct. at 136. Subsequently, one bondholder sued to enforce one of the guarantees of the bonds. *Id.* at 170, 59 S.Ct. at 136. On certiorari, the Supreme Court rejected the bondholder's arguments that the bankruptcy court was not competent to order the release of the liability of the guarantor and that the order need not be accorded conclusive effect. *Id.* at 171–77, 59 S.Ct. at 137–40. The Court held that a court by necessity has the authority to determine its own jurisdiction and that another court may not reexamine the issue of the former court's

jurisdiction upon collateral attack. *Id.* at 172, 59 S.Ct. at 137. Thus, concluded the Court, the bankruptcy court's determination of its jurisdiction was binding on the bondholder and entitled to *res judicata* effect even if that determination were in error. *Id.*

Similarly, in *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), the Supreme Court held that bondholders were bound by the District Court's approval of a debtor's "plan of readjustment" even though the Supreme Court had subsequently invalidated the statute authorizing District Courts to exercise bankruptcy powers. The Court held the bondholders were precluded from relitigating the issue of the authority of the District Court to enter such a plan. *Id.* at 375, 60 S.Ct. at 319.

> As parties, these bondholders had full opportunity to present any objections to the proceedings, not only as to its regularity, or the fairness of the proposed plan of readjustment, or the propriety of the terms of the decree, but also as to the validity of the statute under which the proceeding was brought and the plan put into effect.... There was no attempt to review the decree. If the general principles governing the defense of res judicata are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it.

*Id.* (citations omitted).

The Court thus finds that the Bankruptcy Court was the proper and competent court to determine its own jurisdiction to confirm FMS' Plan of Reorganization. The Court also finds that FDIC had the opportunity to question the jurisdiction of the Bankruptcy Court, either at the confirmation hearing or on direct appeal, and failed to do so. FDIC's failure to raise the juris-

dictional issue bars litigation of that issue before this Court. *See Chicot County*, 308 U.S. at 375, 60 S.Ct. at 319; *Stoll*, 305 U.S. at 171–72, 59 S.Ct. at 137–38; *Republic Supply*, 815 F.2d at 1052.

The Court is aware that the federal courts of appeal are not in agreement on the issue of whether the principle of *res judicata* applies to a bankruptcy court's discharge of the liability of a nondebtor. *Compare Underhill v. Royal*, 769 F.2d 1426, 1431–32 (9th Cir.1985) (bankruptcy court's release of liability of co-debtors or guarantors is without effect and does not bar collateral action against co-debtors or guarantors by creditors of the debtor) *and Union Carbide Corp. v. Newboles*, 686 F.2d 593, 594–95 (7th Cir.1982) (bankruptcy court's discharge of liability of guarantor had no effect upon liability of guarantor and did not preclude collateral action to enforce guaranty) *with In re A.H. Robins, Inc.*, 880 F.2d 694, 701–02 (4th Cir.1989) (bankruptcy court may enjoin suits against nondebtors who may have indemnity or contribution claims against debtor) (adopting decision of *Republic Supply*). The Court is also aware that this Circuit has not directly addressed this issue.[5] The Court finds, however, that the decision of the Fifth Circuit in *Republic Supply* is persuasive and on point with the facts of this case. The Court also finds that the objectives of the doctrine of *res judicata* — namely, finality and certainty of judgments—are furthered by application of the doctrine to the facts of this case. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981). The Court thus finds that FDIC's suit against Tutman based upon Tutman's guaranty of the debts of FMS is barred by the Plan of Reorganization confirmed by the Bankruptcy Court on August 29, 1990. The Court will grant Tutman's motion for summary judgment.[6]

---

**5.** One case from this district, *In re AOV Indus.*, 31 B.R. 1005 (D.D.C.1983) (Richey, J.), *aff'd in part and dismissed in part as moot*, 792 F.2d 1140 (D.C.Cir.1986), has held that a reorganization plan in which creditors *voluntarily* release guarantors in exchange for consideration does not violate 11 U.S.C. § 524(e). 31 B.R. at 1010.

The Court reasoned that such a voluntary release is not a prohibited "discharge of a debt" within the meaning of § 524(e).

**6.** FDIC raises two other arguments in opposition to Tutman's motion for summary judgment, neither of which need be addressed in

## III. Subject Matter Jurisdiction

■ All defendants except for Tutman move to dismiss this action for lack of personal jurisdiction.[7] These defendants argue that FDIC has failed to establish sufficient contacts with the District of Columbia to confer personal jurisdiction over them in this Court. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Court finds that FDIC has established minimum contacts between the defendants and the District of Columbia and will deny the defendants' motions.

To determine whether the exercise of personal jurisdiction is appropriate, the Court must engage in a two-step analysis. *Lott v. Burning Tree Club, Inc.*, 516 F.Supp. 913, 915 (D.D.C.1980). First, the Court must determine whether the District of Columbia long-arm statute [8] permits the exercise of jurisdiction over the defendants, and if so, the Court must then inquire whether the exercise of jurisdiction over the defendants comports with constitutional due process.[9] *Id.* (citing cases).

The District of Columbia long-arm statute, D.C.Code ·Ann. § 13–423 (1981 ed.) (1989 Repl. Vol.), provides that

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia; [or]

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; ...

*Id.* § 13–423(a)(1), (6).

FDIC has produced credible evidence establishing that the exercise of personal jurisdiction by this Court is authorized by the District of Columbia long-arm statute. First, FDIC has produced copies of the guaranty contracts between the defendants and District of Columbia-based NBW. These contracts guarantee a promissory note between NBW and FMS which is governed by District of Columbia law and which was to be performed by rendering payment to NBW at its District of Columbia office. FDIC has also submitted the defendants' own depositions in which they admit to signing the guaranty contracts. In addition, FDIC has produced evidence that defendant Lyle Maul acted as agent

---

great detail. First, FDIC argues that even if the Bankruptcy Court had jurisdiction to release Tutman's guaranty, such a release is not valid without consideration to the FDIC for the release. Some courts have held that the voluntary release of nondebtor liability in exchange for consideration does not violate 11 U.S.C. § 524(e). *See In re AOV Indus.*, 31 B.R. at 1010; *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 334 (Bankr.E.D.Pa.1987). As discussed *supra*, however, a bankruptcy court's release of the liability of a nondebtor is entitled to *res judicata* effect even if the release was not voluntary and was not actually within the bankruptcy court's jurisdiction. The fact that no consideration was given for Tutman's release does not change the Court's earlier analysis.

Second, FDIC argues that the Court should not accord preclusive weight to the Bankruptcy Court's August 29, 1990 order because FDIC has filed a petition with the Bankruptcy Court to vacate or convert the Reorganization Plan based upon FMS' failure to make payments as required by the Plan. Whether the Bankruptcy Court will grant FDIC's petition is speculative and does not provide a basis for disregarding the August 29, 1990 order.

7. In June 1990, defendants Kevin and Maryann O'Donnell and Terry Miller filed motions to dismiss based upon defendant's failure to allege facts sufficient to establish personal jurisdiction. On August 13, 1991, the Court entered an order denying those motions. The parties then conducted discovery. On July 8, 1991, Miller filed a renewed motion to dismiss for lack of jurisdiction. At a status call on July 22, 1991, the O'Donnells requested the Court to reconsider their June 22, 1990 motion to dismiss. On August 2, 1991, defendants Lyle and Linda Maul and Jack and Robin Hennessey joined in the motions of Miller and the O'Donnells.

8. Federal courts look to state law to determine whether they are authorized to exercise jurisdiction over nonresident defendants. *See* Fed. R.Civ.P. 4(e), (f); *Lott*, 516 F.Supp. at 915 (and cases cited therein).

9. The District of Columbia Court of Appeals has interpreted the scope of the District of Columbia long-arm statute to be coextensive with the limits of the due process clause. *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 810–11 (D.C.1976) (en banc).

for the other defendants and negotiated the FMS loan transaction with NBW.[10]

■ The defendants vigorously contest the evidence of minimum contacts submitted by FDIC. Their defenses, while relevant to their ultimate liability in this action, do not refute FDIC's showing that jurisdiction is authorized by the District of Columbia long-arm statute. For example, defendants dispute the scope and duration of their obligations under the guaranty contracts, but they do not deny the existence of these contracts or that they are parties to the contracts.[11] The defendants also deny that Lyle Maul had actual authority to act as their agent or that Maul was ever present at NBW's District of Columbia office. Neither contention, however, is sufficient to overcome FDIC's showing of minimum contacts. The deposition of Jon Gallo indicates that at least one NBW employee believed that Maul was authorized to represent the other defendants. Further, case law indicates that Maul's physical presence in the District of Columbia is not necessary to "transact business" in the District of Columbia for purposes of long-arm jurisdiction. *See Dorothy K. Winston & Co. v. Town Heights Dev., Inc.,* 376 F.Supp. 1214, 1216 (D.D.C.1974) (physical presence in jurisdiction not necessary to "transact business"; telephone calls and correspondence may be sufficient); *see also Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981) (en banc) (per curiam) (same).

■ Having found that jurisdiction over the defendants is proper pursuant to D.C.Code § 13–423(a)(1) or (6), the Court must next determine whether the exercise of long-arm jurisdiction comports with due process. In reaching this determination, the Court is guided by the quality, not the quantity, of defendant's contacts with the forum. *See Mouzavires,* 434 A.2d at 992. Upon examining relevant case law, the Court finds that the contacts between the defendants and the District of Columbia are sufficient such that the exercise of personal jurisdiction over the defendants

does not offend the due process clause. *See McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) ("it is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with the state"); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479–80, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985) (party's contract and course of dealing with entity in foreign jurisdiction sufficient to establish minimum contacts with that jurisdiction); *Mouzavires,* 434 A.2d at 992 ("single act" may be sufficient to establish personal jurisdiction under both statutory and constitutional standards). Thus, the Court finds that the exercise of personal jurisdiction over the defendants is proper and will deny the defendants' motions to dismiss.[12]

### IV. *FDIC's Motion for Summary Judgment*

■ FDIC argues that it is entitled to summary judgment based upon the mere production of the guaranty contracts signed by the defendants. FDIC contends that the Court should not look beyond the language of the guarantees themselves, which FDIC claims impose upon the defendants unconditional liability for the debts of FMS. The Court disagrees with FDIC's characterization of the evidence that the Court may consider in deciding whether to grant summary judgment.

The Court finds that the cases cited by FDIC do not create, as a matter of law, an entitlement to summary judgment upon the mere production of a guaranty contract. EDIC cites only two cases from this jurisdiction, neither of which establishes FDIC's right to summary judgment. In *Greene v. Martin W. Hysong Co.,* 193 A.2d 893 (D.C. 1963), the Court held that a creditor is entitled to maintain an action against a guarantor by producing the guaranty contract and showing that the guaranteed debt remains unpaid. *Id.* at 894. The *Greene* court did not hold that this showing alone is sufficient to warrant summary judgment.

---

10. FDIC relies upon the depositions of Lyle Maul and former NBW employee Jon Gallo, both of which contain testimony tending to establish that Maul exercised at least apparent authority to act as agent for the other defendants.

11. The defendants argue that a second loan arrangement between NBW and FMS novated or modified their obligations under the guaranty contracts. Whether the defendants are liable under the contracts they signed is a question of

fact for trial and does not refute FDIC's showing of minimum contacts based upon the existence of the contracts.

12. The defendants also argue that service of process outside the District of Columbia was improper. The Court finds this argument to be without merit. Section 13–424 of the D.C.Code authorizes service of process outside the District of Columbia on any person subject to personal jurisdiction under the District of Columbia long-arm statute.

**592**

In *Alger Corp. v. Wesley,* 355 A.2d 794 (D.C.1976), the Court held that summary judgment was proper on a guaranty contract when the defendants had not denied execution of the contract, had not raised any defenses concerning the validity of the contract, and had not raised any issues concerning their liability on the contract. *Id.* at 797–98. In contrast, the defendants in the present action have raised several issues concerning the scope of their liability under the guaranty contracts, including allegations that the contracts were modified or novated by subsequent loan agreements between NBW and FMS. The Court disagrees with FDIC's argument that the Court may not consider extrinsic evidence in determining the defendants' liability under the guaranty contracts. Indeed, issues of novation and modification will necessarily turn upon events occurring after execution of the guaranty contracts, and thus not encompassed in the language of the contracts. Unlike the *Alger* case, this action involves several unresolved issues of material fact concerning the liabilities of the defendants which preclude entry of summary judgment. Accordingly, the Court will deny FDIC's motion for summary judgment.

### V. *Conclusion*

For the foregoing reasons, the Court will grant defendant Tutman's motion for summary judgment, will deny the remaining defendants' motions to dismiss for lack of jurisdiction, and will deny plaintiff FDIC's motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.